UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-22995-CIV-COOKE
(09-21053-CR-COOKE)

VERLIE GAY,

    Petitioner
vs.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER DENYING MOTION TO SET ASIDE SENTENCE

THIS MATTER is before me on Petitioner Verlie Gay's Motion to Set Aside Judgment and Sentence Rendered on June 23, 2010. (CIV-ECF No. 1). I have reviewed the motion, the Government's response (CIV-ECF No. 9), and all pertinent portions of the underlying criminal file (*United States v. Gay*, Case No. 09-21053-CR-COOKE). For the reasons explained below, the motion to set aside the sentence is denied.

### I.  BACKGROUND[1]

In September 2009, an undercover law enforcement officer contacted an undisclosed co-conspirator and portrayed himself to be a Miami based source of cocaine. Between September 29, 2009 and October 23, 2009, the undercover officer, the undisclosed co-conspirator, a confidential informant, and co-conspirator Kevin L. Ransom ("Ransom") negotiated the purchase of 30 kilograms of cocaine during several recorded telephone conversations. The cocaine shipment was scheduled for October 27, 2009, and was set to take place in Jacksonville, Florida. As the delivery

---

[1] These facts are taken from Gay's and Ransom's Factual Proffer Statements, Gay's Plea Agreement. (CR-ECF Nos. 54, 55, 59), and Gay's Debriefing Statement (*Report of Investigation*, CIV-ECF No. 9, Ex. G). Both Gay and Ransom, along with their trial counsel, signed the factual proffer and plea agreement.

date grew closer, however, Ransom indicated during monitored conversations that the deal would not move forward because the individual or individuals providing the money for the transaction would not provide the funds as planned. Ransom referred to the party or parties supplying the money only as "daddy" and "boss." The drug exchange did not take place.

After the failed Jacksonville transaction, Ransom remained in contact with undercover officer and repeatedly affirmed his interest in negotiating a new deal. In several recorded conversations and meetings occurring between October 29, 2009 and November 30, 2009, Ransom and the undercover officer discussed a second transaction, this time for the purchase of 50 kilograms of cocaine. The parties agreed that the shipment would take place in Orlando, Florida and that, before the cocaine exchanged hands, Ransom would take the confidential informant to a local residence to show him the purchase money. Once the confidential informant verified that the funds were available the narcotics transaction would be completed.

On December 3, 2009, Ransom met the undercover officer at a Dunkin Donuts in Lake Mary, Florida. After that meeting, at approximately 1:36 p.m., Ransom was followed to a residence in Altamonte Springs, Florida. At about 2:40 p.m., an individual driving a black Chevrolet pick-up truck, later identified to be Gay, arrived at the same residence. Approximately one hour later, at around 3:45 p.m., Ransom met the confidential informant and the undercover officer at a Burger King in Altamonte Springs. Ransom and the confidential informant departed the meeting in separate vehicles and traveled back to the Altamonte Springs residence. When they arrived, Gay's black pick up truck was still in the driveway of the house. Once inside the house, Ransom directed the confidential informant to open a large rolling suitcase with a pattern on top. As planned, the confidential informant confirmed that a large amount of currency was in the suitcase. The confidential informant left the house and informed DEA agents that the money was located in the house. Ransom then returned to the Altamonte Springs' Burger King where he was

arrested. About 30 minutes later, law enforcement officers observed Gay leaving the Altamonte Springs residence with a black suitcase that matched the description of the one the confidential informant had described as containing the money. At this time, Gay was stopped and placed under arrest. A search of the pick-up truck produced the suitcase and a second bag containing an estimated $1,149,901 in cash. Government contends, and Gay later admitted, that Gay had brought his money to the house to complete the purchase of 50 kilograms of cocaine.

On December 18, 2009, Ransom and Gay were indicted for one count of conspiring to posses with intent to distribute over five kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). (*Indictment*, CR-ECF No. 1). Both parties pled not guilty. By March 2010, Gay had agreed to plead guilty and cooperate by providing information against Ransom. On March 29, 2010, Gay, his lawyer David Howard ("Howard"), and the Government met for a debriefing on the matter. (*Report of Investigation*, CIV-ECF No. 9, Ex. G). At this meeting, Gay acknowledged that he was the "money guy" for the cocaine deal. (*Id.*). Gay also stated that he had not been involved in the failed Jacksonville transaction, that he had never conducted a drug deal with Ransom before and that Ransom was to retain the cocaine and pay him $500 per kilogram as return for his investment. (*Id.*).

**Gay's Plea Agreement**

On April 20, 2010, Gay pled guilty pursuant to a signed and sworn Plea Agreement. (*Plea Agreement*, CR-ECF No. 55). The Plea Agreement provides, in relevant part:

> The defendant … understands and acknowledges that the court must impose a minimum term of imprisonment of ten (10) years and may impose a statutory maximum term of imprisonment of up to twenty (20) years, followed by a term of supervised release of life. In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $4,000,000.

(*Id.* at ¶ 3). The words "twenty (20) years" were crossed out and replaced with the word "life" to change the possible maximum sentence in the agreement to life in prison. (*Id.*). This change was

3

initialed and acknowledged by all parties, including Gay, Howard and an Assistant United States Attorney ("AUSA").  (*Id.*).

The Plea Agreement also provides for a recommended sentence reduction:

> The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility.[2]

(*Id.* at ¶ 6).  This recommendation was conditioned as follows:

> The United States, however, will not be required to make this motion and these recommendations if the defendant: (1) fails or refuses to make a full accurate, and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct, (2) is found to have misrepresented the facts to the government prior to entering into this plea agreement, or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

(*Id.*).  Additionally, the Plea Agreement contained terms relating to the parties' ability to appeal the judgment resulting from this agreement.  That provision states the following:

> The defendant is aware that Title 18, United States Code, Section 3642 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or variance from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver or appellate rights. By signing this agreement, the defendant acknowledges that he/she has discussed the appeal waiver set forth in this agreement with his/her attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his/her right to appeal the sentence to be imposed in this case was knowing and voluntary.

---

[2] The Sentencing Guidelines allow for a two level decrease of the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S. Sentencing Guidelines Manual § 3E1.1(a) (2010).

(*Id.* at ¶ 9).  On April 20, 2010, the Court accepted Gay's guilty plea.  (*Change of Plea*, CR-ECF No. 52).

### *Ransom's Debriefing Statement Contradicts Information Provided by Gay*

On May 5, 2010, co-conspirator Ransom agreed to plead guilty to conspiracy to possess with intent to distribute more than five kilograms of cocaine. (*Id.*). The Government contends that Ransom subsequently met with the prosecution for a debrief where he directly contradicted many of Gay's claims. (*Ransom's Debriefing Statement*, CIV-ECF No. 9, Ex. E).  Whereas Gay asserted that he had never been involved in the illegal drug business, Ransom stated that he and Gay had been dealing narcotics since approximately December 2008.  (*Id.*)  Ransom claimed that Gay supplied Ransom with a steady source of cocaine which, in turn, Ransom distributed around the state. (*Id.*)  Ransom also said that their drug dealings were continuous until April 2009 when Gay's cocaine supplier suddenly became unavailable.  (*Id.*)  Lastly, Ransom asserted that Gay, not Ransom, was the owner of the cocaine and that Ransom was set to turn a profit of $500 per kilogram purchased. (*Id*).

The Government alleges that Ransom's statements were corroborated by the Tampa United States Attorney's Office and Hillsborough County's Sheriff's Office.  Specifically, they claim that a large Mexican drug smuggling operation was dismantled in April of 2009, right around the time Ransom claimed Gay's cocaine supplier became unavailable.  The Government also contends that two cooperating defendants in the Tampa drug case identified Gay as their top buyer of cocaine and stated that he purchased approximately 40 kilograms of the drug from their organization on a weekly basis.  It is further alleged that this amount is consistent with the quantity that Ransom stated he acquired from Gay weekly.

Given the discrepancies between Gay's and Ransom's claims, the Government requested that Gay revisit his debrief statement to resolve any material differences. (*May 20, 2010, E-mail*

5

*Between AUSA Jared Dwyer and David Howard*, CIV-ECF No. 9, Ex. F). In particular, the Government asked that Gay readdress his role in the operation and the involvement of co-conspirator Joyce Pearson and that Gay acknowledge that he, not Ransom, was the purchaser of the cocaine. (*Id.*). Despite his defense attorney's advise to do so, Gay refused to comply with the government's request. (*Howard Aff.*, CIV-ECF No. 9, Ex. H).

***Gay's Sentencing and Subsequent Motion to Set Aside Judgment and Sentence***

On June 23, 2010, Gay was sentenced to the mandatory minimum of 120 months.[3] (*Judgment as to Verlie Gay*, CR-ECF No. 66). On August 19, 2010, Gay moved to vacate his sentence on the grounds that his defense counsel inadequately represented him during trial. Specifically, Gay contends that he was denied effective assistance of counsel for five distinct reasons: (1) Gay's counsel induced him to plead guilty and to admit to inaccurate facts by making the false promise that Gay would only get probation; (2) Gay disputed the prosecution's version of the facts but defense counsel failed to investigate the factual discrepancies on the record; (3) Gay's counsel neglected to file a viable motion to suppress evidence recovered from his vehicle at the time of arrest; (4) Gay was eligible for a reduced prison term under the safety valve statute but counsel failed to argue for a sentence reduction; and (5) Gay unambiguously requested counsel to file an appeal and counsel disregarded his request..

## II. DISCUSSION

In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance – that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice – but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Chandler v. United States*, 218 F.3d 1305, 1312 (11th Cir. 2000) (en

---

[3] In accordance with the statutory guidelines, the Court determined that Gay's sentencing range was 135 to 168 months. The Court varied, however, and sentenced Gay to the mandatory minimum of 120 months without objection.

banc). There is no reason for a court to approach the inquiry in any specific order, or even to address both components of the inquiry if the defendant makes in inefficient showing on one. *Strickland*, 466 U.S. at 697. Thus, a court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. *Id.* at 697; *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995).

**A. Claim One – Inducement to Plead Guilty**

Gay contends that he was denied effective assistance of counsel when Howard allegedly induced Gay to plead guilty by promising that he would get a lesser sentence. There is, however, no basis in the record in support of these arguments. On April 20, 2010, Gay voluntarily signed a Factual Proffer for Guilty Plea and Plea Agreement recognizing his involvement and culpability in the present case. (*Factual Proffer Statement*, CR-ECF No. 54; *Plea Agreement*, CR-ECF No. 55). Gay initialed handwritten changes made to the Plea Agreement and indicated that he was aware that the minimum mandatory sentence for his offense was ten years imprisonment. (*Plea Agreement.*, CR-ECF No. 55). Further, the Court informed Gay during the change of plea hearing that "any [sentencing] estimate that had been given, is just that, an estimate." (*Change of Plea Hr'g Tr.* 5, Apr. 20, 2010, CR-ECF No. 74). At that hearing, Gay assured the Court that he pleaded guilty because he believed that this was in his best interest and that he had not been promised anything not mentioned in the record or the plea agreement. (*Hr'g Tr.* 6).

Habeas relief is not required where the allegations "viewed against the record . . . are so palpably incredible or patently frivolous as to warrant summary dismissal." *Tajada v. Dugger*, 941 F.2d 1551, 1559-60 (11th Cir. 1991) (internal quotation marks and citations omitted). A defendant is bound by statements made during a change of plea hearing and may not later assert that he committed perjury because his attorney told him to lie. *See Iacono v. State*, 930 So.2d 829 (Fla. Dist. Ct. App. 2006). Gay's statements during the change of plea hearing unequivocally establish

that he voluntarily pleaded guilty and that he was aware of the consequences of admitting guilt. Regardless of the alleged promises made by Howard, Gay cannot claim that he was prejudiced by previous estimations of his sentence since the Court informed him that these would not be honored. (*Hr'g Tr.* 5, CR-ECF No. 74). Gay's claims that counsel ineffectively represented him at trial are unsupported by the record. Accordingly, Gay has failed to meet his burden under *Strickland* to show prejudice and his motion should be denied to the extent it rests on this claim.

**B.  Claims Two and Three – Failure to Investigate and File Motion to Suppress**

Gay argues that he was denied effective assistance of counsel because Howard neglected to investigate factual discrepancies in the record and failed to file a viable motion to suppress. Gay maintains that the prosecution's factual proffer contained serious inaccuracies with regard to the nature of Gay's business with co-conspirator Ransom and the number and color of suitcases containing the money for the narcotics transaction. According to Gay, Howard blatantly disregarded these inconsistencies despite Gay's repeated attempts to draw his attention to the factual errors. Because Howard failed to look into the legitimacy of his claims, Gay states that he was effectively denied of adequate assistance of counsel at trial. Furthermore, Gay argues that Howard's representation fell below constitutional standards because he neglected to file a motion to suppress evidence found in Gay's vehicle at the time of his arrest. Gay does not provide any basis for the claim that a motion to suppress should have been filed, yet, he moves to vacate his judgment on grounds that counsel's conduct was unreasonable under the Sixth Amendment. For the reasons explained below, Gay's claims are subject to the same analysis and suffer the same fate as his initial claim.

Although "[c]ounsel has a duty to make reasonable investigations," there is wide latitude "to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). "Counsel cannot be adjudged incompetent for performing

8

in a particular way in a case, as long as the approach taken might be considered sound trial strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced [at trial] or of the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland*, 466 U.S. at 688-89.

In his affidavit, Howard asserts that he and Gay reviewed "all of the discovery" and discussed any possible inconsistencies on the record. Howard contends that the parties examined possible defenses and strategies which may stem from the alleged factual errors. Howard further asserts that there was nothing of sufficient "evidentiary weight to exculpate Gay…. in light of the evidence implicating him." (*Howard Aff.*, CIV-ECF No. 9, Ex. H). The Government explains that the discrepancies on the record were effectively explained by Ransom and states that extraneous evidence obtained from the Tampa investigation also confirm Ransom's version of the facts. (*Factual Proffer Statement,* CR-ECF No. 59; *Report of Investigation,* CIV_ECF No. 9, Ex. G). Under these circumstances, it was not unreasonable for counsel to conclude that no further inquiry into the alleged factual inconsistencies was required.

Howard also explained that he examined the issue of whether to file a motion to suppress evidence obtained at the time of arrest but found that "there was no legal basis for doing so." (*Id.*). The Government has established that the search of Gay's vehicle at the time of arrest was justified because, based on weeks of surveillance, DEA agents had the "reasonable suspicion" that "criminal activity was afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Accordingly, there is no indication that counsel should have concluded that a search of Gay's vehicle was unjustified or that a motion to suppress the money found in his truck was viable. Because Gay has failed to demonstrate that a motion to suppress should have been filed on his behalf, his claim that Howard was inefficient for not doing so is without merit.

**C. Claim Four – Failure to Raise the Safety Valve Issue at Sentencing**

Gay also argues that, despite his eligibility for a reduced sentence under the safety valve exception, Howard failed to raise the issue at sentencing thus subjecting him to a more severe punishment. Consequently, Gay asserts, Howard's representation was ineffective. "Safety-valve relief allows for sentencing without regard to any statutory minimum, with respect to certain offenses, when specific requirements are met." *United States v. Milkintas*, 470 F.3d 1339, 1344 (11th Cir. 2006). "The burden is on the defendant to come forward and to supply truthfully to the government all the information that he possesses about his involvement in the offense, including information relating to the involvement of others and to the chain of the narcotics distribution." *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997). Where a defendant is not truthful in providing information and evidence concerning the charges in question, the safety-valve sentencing reduction does not apply. *United States v. Johnson*, 375 F.3d 1300, 1302 (11th Cir. 2004).

The record establishes that Gay was not forthcoming with regard to the extent of his participation in the present case. Gay's claims that he was not involved in the failed Jacksonville transaction, that he never conducted a drug deal in the past, that co-conspirator Joyce Pearson was not implicated in the purchase of narcotics, and that he did not intend to purchase the fifty kilograms of cocaine were disproven by Ransom's version of the facts and evidence obtained in the Tampa investigation. (*Ransom's Debriefing Statement*, CIV-ECF No. 9, Ex. E). When Gay's veracity was brought into question, the Government informed Howard that the prosecution would not support the application of the safety valve statute unless Gay cooperated and readdressed his involvement truthfully. (*May 20, 2010, E-mail Between AUSA Jared Dwyer and David Howard*, CIV-ECF No. 9, Ex. F). Howard asserts that Gay refused to handle these issues in a manner that would preserve safety valve eligibility, despite Howard's advice to do so. (*Howard Aff.*, CIV-ECF No. 9, Ex. H).

At sentencing, Howard addressed the issue when he told the Court that "some developments… could have taken place which would allow the court to go below" the mandatory minimum "but Mr. Gay does not want to pursue that option." (*Sentencing Hr'g Tr.* 4, June 23, 2010, CR-ECF No. 75). Under these facts, Gay's contention that he "was never given the opportunity to either correct the deficiency or argue that he was truthful" is inaccurate. (*Motion to Vacate*, CIV-ECF No. 1, p. 13). It can hardly be argued that Howard's failure to request a reduced sentence amounts to deficient representation. Gay opted to be uncooperative by testifying to facts that were proven not to be true, thus, precluding application of the safety valve statute. Because counsel's strategic assessment was not unreasonable or so egregious as to undermine "the proper functioning of the adversarial process" Gay's claim under this basis fails. *Strickland*, 466 U.S. at 686.

**D. Claim Five – Failure to File Requested Direct Appeal**

A prisoner who collaterally attacks his conviction can establish cause for procedural default only if he can show that his attorney's performance failed to meet the *Strickland* standard. *Reece v. United States*, 119 F.3d 1462, 1465 (11th Cir. 1997). Counsel's failure to file a direct appeal after an explicit client request constitutes a *per se* violation of a petitioner's Sixth Amendment's right to effective representation. *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"). When a lawyer disregards the defendant's instructions to seek appellate review, prejudice is presumed and "no further showing from the defendant of the merits of his underlying claim[ ]" is required. *Flores-Ortega*, 528 U.S. at 484. A petitioner need not establish that his direct appeal would have been viable; he need only show that counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken. *Id*. at 486; *see also Gomez–Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005).

11

Even if a client has not made a specific request of his attorney to file an appeal, a court must examine "whether the attorney consulted with the client regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes." *Gomez-Diaz*, 433 F.3d at 792 (citing *Flores-Ortega*, 528 U.S. at 478). An attorney has the affirmative duty to consult when "(1) any rational defendant would want to appeal, or (2) his particular client reasonably demonstrated an interest in appealing." *Gomez-Diaz,* 433 F.3d at 792. When the content of the communication between a petitioner and his attorney is not readily ascertainable from the record, an evidentiary hearing is required. *Id.* These general principles are applicable even where the defendant has signed a limited waiver of his right to appeal. *Id.* at 790. Specifically, the Eleventh Circuit has held that unless a petitioner waives *all* appellate rights, the rule that counsel must file notice of appeal upon request applies with equal force in circumstances where defendant contractually waived only some appellate rights. *Id.* at 793.

The court's analysis in *Gomez-Diaz v. United States* is relevant to the case at hand. There, the defendant executed a waiver of his rights to appeal or collaterally attack his sentence unless (a) the defendant was sentenced above the statutory maximum, (b) the sentencing judge issued an upward departure, or (c) the defendant was sentenced in violation of the law apart from the guidelines. *Gomez-Diaz,* 433 F.3d at 790. Following his sentence, the defendant filed a 28 U.S.C. § 2255 motion claiming ineffective assistance of counsel due to his lawyer's failure to appeal despite being asked to do so. The record in *Gomez-Diaz* did not affirmatively confirm or deny whether the defendant had in fact requested an appeal, and therefore, whether counsel had the duty to consult or whether the attorney had discussed the appeal process with his client. *Id.* at 792-93. The Eleventh Circuit remanded the case for an evidentiary hearing to make further factual determinations regarding petitioner's claim. The court held that if "the evidence established that the attorney acted contrary to defendant's wishes" or that he failed to fulfill his duty to consult, "prejudice was to be

12

presumed and defendant was entitled to an out-of-time appeal, regardless of whether he could identify any arguably meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver." *Id.* at 793.

Here, Gay asserts that he specifically requested that Howard appeal on his behalf. Gay contends that Howard stated that this would be a "waste of time" but that, nonetheless, Gay directed him to file a notice of appeal and "none was ever filed." (*Motion to Vacate*, CIV-ECF No. 1, p. 9). Conversely, Howard claims that Gay "did not request" a notice of appeal and that it did not occur to him to file one as he perceived "no viable appealable issues in his case" and "because there was an appeal waiver provision in his plea agreement." (*Howard Aff.*, CIV-ECF No. 9, Ex. H, ¶ 9). Even with a liberal construction of Gay's claims, the record does not contain any additional evidence that would shed light over this contradicting information. Under these facts, the pleadings are insufficient to establish whether Gay was prejudiced by Howard's failure to file an appeal or if a *per se* constitutional violation of the right to an attorney has taken place.

### III.  CONCLUSION

For the reasons explained in this Order, I hereby **ORDER and ADJUDGE** that Gay's Motion to Vacate (CIV–ECF No. 1) is **DENIED**. The Clerk is directed to **CLOSE** this case.

**DONE and ORDERED** in chambers, at Miami, Florida, on this 18th day of July 2011.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Counsel of record*